# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMES DANGELO SIMS,

      Defendant-Appellant.

UNPUBLISHED
August 9, 2016

No. 327562
Muskegon Circuit Court
LC No. 13-064152-FH

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), and possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), enhanced as second or subsequent offenses. MCL 333.7413(2). Although defendant aptly argues that the search warrant issued for his home lacked a probable cause basis, relief is not warranted because the executing officers acted in good faith. Defendant also correctly posits that the court improperly admitted evidence of his past drug-related offenses. This improperly admitted evidence was harmless, however, in light of the substantial evidence of defendant's guilt. The remainder of defendant's challenges lack merit and we therefore affirm.

## I. BACKGROUND

On November 7, 2013, members of the West Michigan Enforcement Team (WEMET), search warrant in hand, searched defendant's home on suspicion of cocaine trafficking. When the officers arrived, defendant was standing in the kitchen, near a window facing the street. The officers observed defendant take flight deeper in the home. Fearing the destruction of evidence or escape of their suspect, the officers forced entry.

During the subsequent search, the officers discovered in the kitchen two "chunks" of black tar heroin, totaling 18.7 grams, a scale, a box of plastic baggies, scissors, a red cellular telephone, and a razor blade coated in cocaine residue. The cellular telephone included incoming texts referring to the recipient by defendant's nickname and messages indicative of drugs transactions. In the garage, officers found a "white powdery substance" believed to be a "cutting agent" used to dilute the purity of heroin and cocaine to increase the overall amount of product to sell. On defendant's person, the officers found $1,545. The bills were mostly in $20 denominations (the street price of .1 gram of heroin) and were found in bundles in three different pockets. John Riley, defendant's friend who also resided in the home, possessed a small amount

-1-

of marijuana and drug paraphernalia, but no cash. A trace amount of cocaine was found in Riley's bedroom.

At trial, both Riley and defendant claimed that Riley was a drug dealer, not defendant. The prosecution contended that defendant was a midlevel dealer and Riley worked for him as a "drug runner." Consistent with this theory, the prosecution established that defendant conducted all his financial affairs, including the purchase of large items such as his home and vehicles, using cash. The jury accepted the prosecution's theory and convicted defendant as charged.

## II. SEARCH WARRANT

Defendant argues that the evidence recovered during the search of his home should have been suppressed because the search warrant was constitutionally invalid. Defendant raised this issue in a pretrial motion to suppress, which the trial court denied. We review for clear error a trial court's factual findings on a motion to suppress, but review de novo the court's ultimate determination and underlying constitutional questions. *People v Brown*, 297 Mich App 670, 674; 825 NW2d 91 (2012); *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999).

US Const Am IV and Const 1963, art 1, § 11 " 'guarantee the right of persons to be secure against unreasonable searches and seizures.' " *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004), quoting *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant . . . where the police officer's conduct does not fall within one of the specific exceptions to the warrant requirement." *Hellstrom*, 264 Mich App at 192. "Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable cause." *Id*.

"Probable cause exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quotation marks and citation omitted). Probable cause may be found from facts averred in an affidavit. MCL 764.1a(2); MCR 6.102(B). To create probable cause based on information supplied by an unnamed informant, the affidavit must contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). Ultimately, however,

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." [*People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007), quoting *Illinois v Gates*, 462 US 213, 238-239; 103 S Ct 2317; 76 L Ed 2d 527 (1983).]

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Keller*, 479 Mich at 475, quoting *Gates*, 462 US at 239. If probable cause is lacking, the search warrant is invalid and any evidence seized

pursuant to that warrant must be excluded absent an applicable exception to the exclusionary rule. *People v Stevens (After Remand)*, 460 Mich 626, 633-634; 597 NW2d 53 (1999).

Defendant justifiably argues that the search warrant affidavit was insufficient to establish probable cause. The affidavit was based almost entirely on the representations of an unnamed informant. As such, information bearing on the informant's knowledge base and historical veracity and/or reliability was required by MCL 780.653(b). Such information was "highly relevant" to the ultimate constitutional determination of whether there was sufficient probable cause. *Gates*, 462 US at 230; *Keller*, 479 Mich at 475. The current affidavit contained a basis for the informant's knowledge—that the informant had been inside defendant's home where he saw a large quantity of cocaine. But it lacked any facts bearing upon the informant's veracity or reliability. Although the affidavit alleged that detectives had previously used the informant to make "over 10 controlled buys of illegal drugs including cocaine" and that these buys had resulted in "over 10 search warrants, over 10 arrest warrants and over 10 criminal convictions," the affiant never suggested that the informant had provided any information to prompt these controlled buys. Indeed, there were no allegations that the informant had *ever* provided information to detectives that had proven credible or reliable upon investigation. Cf *People v Walker*, 401 Mich 572, 582-583; 259 NW2d 1 (1977). See also *United States v Weaver*, 99 F3d 1372, 1379 (CA 6, 1996). As the magistrate who issues a warrant is required to look at the totality of the circumstances in assessing probable cause, an affiant may make up for the deficiency in one area (such as the lack of information regarding the informant's veracity and reliability) by making a "strong showing" of some other factor. *Gates*, 462 US at 233. "[I]t is possible that weak factual information may be bolstered if the authorities undertook probative efforts to corroborate an informant's claims through independent investigations." *Weaver*, 99 F 3d at 1379, citing *Gates*, 462 US at 242. See also *Keller*, 479 Mich at 483 n 43; *People v Waclawski*, 286 Mich App 634, 699; 780 NW2d 321 (2009). Here, however, the only independent investigation conducted by the affiant was to confirm defendant's nickname, that he did in fact live at the subject address, and that he had prior convictions for drug-related offenses. This investigation in no way corroborated the informant's tip that defendant possessed a large quantity of cocaine.

In sum, the search warrant affidavit in this case violated not only the requirements of MCL 780.653, but was constitutionally deficient. The trial court thus erred in finding sufficient probable cause to support issuing a warrant. Nonetheless, the trial court ultimately did not abuse its discretion in denying defendant's suppression motion because the police acted in good faith reliance on the search warrant.

As noted above, where a search warrant is deemed constitutionally invalid, all evidence seized pursuant to that warrant must be excluded unless a recognized exception to the exclusionary rule applies. One such exception is the "good-faith" exception, set forth by the United States Supreme Court in *United States v Leon*, 468 US 897, 920-922; 104 S Ct 3405; 82 L Ed 2d 677 (1984), and adopted by our Supreme Court in *People v Goldston*, 470 Mich 523, 541; 682 NW2d 479 (2004). As its name implies, evidence secured based on an invalid warrant need not be excluded if the police acted in "good faith" in executing the warrant.

> [A] warrant issued by a magistrate normally suffices to establish that the law enforcement officer has acted in good faith in conducting the search.

-3-

Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role . . . . In such circumstances, no reasonably well trained officer should rely on the warrant.[1] Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. [*Hellstrom*, 264 Mich App at 196-197, quoting *Leon*, 468 US at 922-923 (quotation marks and citations omitted).]

Even though the subject warrant was based on inadequate information to support a finding of probable cause, the inadequacy was not so overwhelming that it would preclude a finding that the police officers acted in good-faith reliance upon it. The affidavit was not "facially deficient." Rather, it adequately described the location to be searched and the evidence to be seized. The affidavit was not " 'so lacking in indicia of probable cause' " that the officers could not objectively believe that the warrant was valid. *Leo*, 468 US at 923 (citations omitted); *Hellstrom*, 264 Mich App at 199. Defendant does not suggest that the affidavit contained any intentionally false or misleading information. *Leon*, 468 US at 923; *Hellstrom*, 264 Mich App at 199. Finally, there is no evidence to indicate that the issuing magistrate wholly abandoned his judicial role in determining that the affidavit constituted sufficient probable cause. *Leon*, 468 US at 923; *Hellstrom*, 264 Mich App at 200. In the face of these facts, the deterrent purpose of the exclusionary rule would not be served by suppressing the evidence.

## III. RIGHT OF CONFRONTATION

Defendant contends that he was denied his Sixth Amendment right to confront the witnesses against him when the prosecution failed to present the confidential informant at a suppression hearing. Although defendant requested in his pretrial motion to suppress that the confidential informant be produced for examination, he did not raise confrontation clause

---

[1] Abandoning the judicial role "requires more than reaching a different legal conclusion from that of an appellate court." *Keller*, 479 Mich at 474 n 17. Rather, it requires a showing that the magistrate, for some articulable reason, could not have acted in a neutral and detached manner in regard to the warrant application. See *Lo-Ji Sales Inc v New York*, 442 US 319, 329; 99 S Ct 2319; 60 L Ed 2d 920 (1979).

concerns. Thus, our review is limited to plain error affecting defendant's substantial rights. *People v Walker (On Remand)*, 273 Mich App 56, 66; 728 NW2d 902 (2006).

Pursuant to US Const, Am VI " '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]' " *People v Sardy*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 319227, issued December 29, 2015); slip op at 3 (alterations in original). Similarly, under Const 1963, art 1, § 20, " '[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her[.]" *Id*. The Confrontation Clauses bar the admission of "testimonial" statements of a witness who does not appear at trial, unless the witness was "unavailable" to testify as defined in the rules of evidence and the defendant had a prior opportunity to cross-examine the witness. *Walker (On Remand)*, 273 Mich App at 60-61; *Sardy*, ___ Mich App at ___; slip op at 3.

"A statement made by a confidential informant to the authorities generally constitutes a testimonial statement." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing *United States v Cromer*, 389 F 3d 662, 675 (CA 6, 2004). Had the informant's out-of-court statements to the WEMET team been admitted at defendant's *trial*, defendant's right of confrontation would have been implicated. *Walker (On Remand)*, 273 Mich App at 60-61. However, none of the informant's statements were admitted into evidence at trial. Neither were they admitted at any pretrial evidentiary hearing. Accordingly, the informant was not a witness against defendant and defendant had no one to confront. As such, defendant's right of confrontation was not infringed.[2]

## IV. OTHER ACTS EVIDENCE

Defendant challenges the trial court's admission of other-acts evidence against him, specifically information regarding his prior drug-related crimes. We review a trial court's decision whether to admit evidence for an abuse of discretion, but preliminary questions whether a rule of evidence precludes admissibility de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A preserved error in the admission of evidence does not constitute grounds for reversal unless defendant can show a miscarriage of justice; that is, that "it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

Evidence of a defendant's "other crimes, wrongs, or acts" is inadmissible to demonstrate a defendant's propensity to act in conformity with those acts. MRE 404(b)(1); *People v Starr*,

---

[2] Defendant argues that the trial court erred in the first instance by refusing to hold an evidentiary hearing at which the informant could have been produced for examination. However, the police are generally "not bound to disclose the sources of the information which led to the apprehension of the prisoner" absent a showing by the defendant that disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" *People v Underwood*, 447 Mich 695, 702-705; 526 NW2d 903 (1994) (citations omitted). Defendant made no such showing in this case.

457 Mich 490, 494; 577 NW2d 673 (1998). However, other-acts evidence may be admissible under MRE 404(b) for other, noncharacter purposes, such as to establish "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b)(1); *Starr*, 457 Mich at 495-496.[3] In *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), our Supreme Court set forth the controlling test to determine the admissibility of other-acts evidence under MRE 404(b). Under that test, a court must determine first that the evidence is offered for a proper, noncharacter purpose; second that the evidence is relevant to that purpose under MRE 402; and third that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under MRE 403. *Id*. at 74-75. Finally, upon the admission of other-acts evidence, the trial court may provide a limiting instruction to the jury under MRE 105. *Id*. at 75.

Here, the trial court admitted evidence of defendant's three previous arrests, spanning from seven to 11 years before the charged conduct, for possession and/or sale of crack cocaine. In one instance, a police officer observed defendant selling cocaine. In the other two, officers found defendant in possession of cocaine under circumstances indicating that he intended to sell it. The prosecution offered, and the trial court agreed, that the evidence was admissible for several noncharacter purposes, including establishing defendant's knowledge, intent, and a common plan or scheme.

The prior acts were not sufficiently similar to the current acts to be relevant or probative. In the current case, the evidence suggested that someone in defendant's home was processing heroin in preparation of mass sales. In the earlier matters, defendant was caught with cocaine on his person, either in the act of selling or packaged such that a sale must be imminent. As to a common scheme or plan, "something more" than "mere similarity" between the charged and prior acts is required. *People v Sabin (After Remand)*, 463 Mich 43, 64-65; 614 NW2d 888 (2000) (citation omitted). That "something more" is missing from this case. As to defendant's knowledge and intent, the fact that defendant had previously been arrested for possessing crack cocaine with the apparent intent to sell did not make it any more probable that defendant knew of the heroin and cocaine residue found in his home or that he intended to sell these drugs. The only logical inference to be drawn from this evidence is that which is specifically prohibited by MRE 404(b), i.e., that "defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver" drugs again. *Crawford*, 458 Mich at 396-397. Even if the evidence had some logical relevance distinct from the impermissible character inference, its limited probative value was substantially outweighed by the potential for unfair prejudice. MRE 403. Accordingly, the trial court abused its discretion in admitting the challenged evidence.

Even though the challenged evidence was admitted in error, defendant is not entitled to relief. Simply put, the untainted evidence in this case overwhelmingly established defendant's

---

[3] The trial court erroneously based its analysis on MCL 768.27 instead of the evidentiary rule. This error was harmless as the analysis is the same under either the statute or the rule of evidence. See *People v Watkins*, 491 Mich 450, 469 n 44; 818 NW2d 296 (2012).

guilt with respect to both charges. Police found cocaine residue and a large amount of heroin, along with equipment and materials necessary to prepare the heroin for sale. While defendant and Riley each testified that the drugs belonged to Riley, and defendant claimed ignorance, the weight of the evidence proved otherwise. Specifically, defendant—not Riley—was the one initially seen by the officers standing in the kitchen right next to the drugs; defendant—not Riley—ran from the officers; defendant—not Riley—was found in possession of a large amount of cash; and the evidence supported that defendant—not Riley—was the owner of the red cellular telephone found next to the heroin, which contained a plethora of information supporting that defendant was engaged in narcotics trafficking. Given the overwhelming evidence against defendant, it is unlikely that the jury would have reached a different outcome in the absence of the other-acts evidence. *Lukity*, 460 Mich at 495.

## V. ASSISTANCE OF COUNSEL

Defendant finally challenges defense counsel's failure to call Ronald Williams at trial. Williams swore in an affidavit presented on appeal that he had purchased heroin from Riley in the past, but never from defendant. Williams further indicated that WEMET officers tried to convince him to testify against defendant but that any such testimony would have been false. Defendant requested a remand to the trial court for a hearing on this issue, which this Court denied. *People v Sims*, unpublished order of the Court of Appeals, entered January 6, 2016 (Docket No. 527562). We discern no reason to remand and limit our review to mistakes apparent on the existing record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

US Const, Am VI and Const 1963, art 1, § 20 protect a defendant's right to the assistance of counsel. "[T]he right to counsel is the right to effective assistance of counsel." *United States v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Effective assistance is presumed and a defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To prevail on an ineffective assistance claim, a defendant must establish that (1) his defense counsel's performance was objectively deficient and (2) the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

On this record, we cannot conclude that counsel's failure to call Williams at trial was objectively unreasonable. Generally, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *Horn*, 279 Mich App at 39 (citations omitted). Even if the jury believed Williams, his likely testimony would have been entirely consistent with the prosecution's theory that Riley "ran" drugs for defendant. In any event, given the evidence discussed above, the failure to call Williams did not deprive defendant of a substantial defense, *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999), and there is no reasonable probability that the outcome would have been different had Williams testified.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher